## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| PAUL PARSHALL, Individually and On Behalf of All Others Similarly Situated, | ) ) Case No. _____ |
| Plaintiff, | ) ) JURY TRIAL DEMANDED |
| v. | ) ) CLASS ACTION |
| HCSB FINANCIAL CORPORATION, MICHAEL S. ADDY, CLAY D. BRITTAIN, III, GERALD R. FRANCIS, JAN H. HOLLAR, JAMES C. NESBITT, JOHN T. PIETRZAK, D. SINGLETON BAILEY, and UNITED COMMUNITY BANKS, INC., | ) ) ) ) ) ) ) |
| Defendants. | ) |

## COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1. This action stems from a proposed transaction announced on April 20, 2017 (the "Proposed Transaction"), pursuant to which HCSB Financial Corporation ("HCSB" or the "Company") will be acquired by United Community Banks, Inc. ("United").

2. On April 19, 2017, HCSB's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement") with United. Pursuant to the terms of the Merger Agreement, stockholders of HCSB will receive 0.0050 shares of United per share of HCSB.

3.   On May 17, 2017, defendants filed a Form S-4 Registration Statement (the "Registration Statement") with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction.

4.   The Registration Statement omits material information with respect to the Proposed Transaction, which renders the Registration Statement false and misleading.  Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Registration Statement.

## JURISDICTION AND VENUE

5.   This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6.   This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.   Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8.   Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of HCSB common stock.

9.   Defendant HCSB is a South Carolina corporation and maintains its principal executive offices at 3640 Ralph Ellis Blvd., Loris, South Carolina 29569.  The Company is the bank holding company for Horry County State Bank.  HCSB's common stock is traded OTC under

the ticker symbol "HCFB."

10. Defendant Michael S. Addy ("Addy") has served as a director of HCSB since 2006 and is Chairman of the Board.

11. Defendant Clay D. Brittain, III ("Brittain") has served as a director of HCSB since 2002.

12. Defendant Gerald R. Francis ("Francis") is a director of HCSB.

13. Defendant Jan H. Hollar ("Hollar") has served as a director and Chief Executive Officer ("CEO") of HCSB since April 2016.

14. Defendant James C. Nesbitt ("Nesbitt") is a director of HCSB.

15. Defendant John T. Pietrzak ("Pietrzak") has served as a director of HCSB since May 2016.

16. Defendant D. Singleton Bailey ("Bailey") has served as a director of HCSB since 1999.

17. The defendants identified in paragraphs 8 through 16 are collectively referred to herein as the "Individual Defendants."

18. Defendant United is a Georgia corporation with its principal executive offices located at 125 Highway 515 East, Blairsville, Georgia 30512.

## CLASS ACTION ALLEGATIONS

19. Plaintiff brings this action as a class action on behalf of himself and the other public stockholders of HCSB (the "Class"). Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

20. This action is properly maintainable as a class action.

21. The Class is so numerous that joinder of all members is impracticable. As of April

3

19, 2017, there were approximately 405,232,383 shares of HCSB common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

22. Questions of law and fact are common to the Class, including, among others: (i) whether defendants violated the 1934 Act; and (ii) whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

23. Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class. Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

24. The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

25. Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

*Background of the Company and the Proposed Transaction*

26. HCSB was founded in 1999 and is a registered bank holding company with $376 million in assets.

27. The Company operates as the holding company for Horry County State Bank, which provides commercial banking products and services primarily in Horry County, South

Carolina.

28.     Horry County State Bank offers a range of deposit services, including checking accounts, savings accounts, certificates of deposit, money market accounts, and individual retirement accounts.

29.     Horry County State Bank also originates real estate loans, including residential and commercial real estate loans, as well as construction and development loans; commercial loans comprising secured and unsecured loans, lines of credit, and working capital loans; consumer loans for personal and household purposes, such as secured and unsecured installment and term loans, home equity loans and lines of credit, and revolving lines of credit; and agricultural loans.

30.     Horry County State Bank operates through a network of eight branches.

31.     On March 3, 2017, the Company filed a Form 10-K with the SEC, which contained the Company's financial results for the year ended December 31, 2016. Among other things, the Company reported that net income increased to $6,246,000, compared to a net loss of $246,000 in the year ended December 31, 2015 and a net loss of $291,000 in the year ended December 31, 2014. Net income available to common shareholders increased to $20,024,000, compared to a net loss of $1,758,000 in the year ended December 31, 2015 and a net loss of $1,403,000 in the year ended December 31, 2014.

32.     On April 19, 2017, the Board caused HCSB to enter into the Merger Agreement, pursuant to which the Company will be acquired by United for inadequate consideration.

33.     To the detriment of the Company's stockholders, the terms of the Merger Agreement substantially favor United and are calculated to unreasonably dissuade potential suitors from making competing offers.

5

34.     For example, the Individual Defendants have all but ensured that another entity will not emerge with a competing proposal by agreeing to a "no solicitation" provision in the Merger Agreement that prohibits the Individual Defendants from soliciting alternative proposals and severely constrains their ability to communicate and negotiate with potential buyers who wish to submit or have submitted unsolicited alternative proposals.  Section 4.19(a) of the Merger Agreement states, in relevant part:

> (a) Except as set forth in Section 4.19(b) below, Seller shall not, and shall not authorize or permit any of its affiliates, officers, directors, employees, agents, or advisors to, directly or indirectly, solicit or entertain offers from, negotiate with or in any manner encourage, discuss, accept, or consider an Acquisition Proposal of any other Person. In addition, Seller agrees to immediately cease and cause to be terminated any previously undertaken or ongoing activities, discussions or negotiations with any other Person with respect to any Acquisition Proposal.

35.     Further, the Company must promptly advise United of any proposals or inquiries received from other parties.  Sections 4.19(a) and (c) of the Merger Agreement state, in relevant part:

> [I]f Seller or any of its affiliates, officers, directors, employees, agents, or advisors receives any communication regarding an Acquisition Proposal between the date hereof and the Closing Date, then Seller shall immediately notify Buyer of the receipt of such Acquisition Proposal. . . .
>
> (c) In addition to the foregoing, Seller shall keep Buyer reasonably informed on a prompt basis of the status and material terms of any such Acquisition Proposal, including any material amendments or proposed amendments as to price and other material terms thereof and any change in Seller's intentions with respect to the transactions contemplated hereby.

36.     Moreover, the Merger Agreement contains a highly restrictive "fiduciary out" provision permitting the Board to change its recommendation of the Proposed Transaction under extremely limited circumstances, and grants United a "matching right" with respect to any "Superior Proposal" made to the Company.  Section 2.2(b) of the Merger Agreement states:

6

Except as provided in this Section 2.2(b), the board of directors Seller shall (i) communicate to the shareholders of Seller the board's recommendation that the shareholders adopt and approve this Agreement and the transactions contemplated hereby, including the Merger (the "Seller Recommendation") and (ii) include the Seller Recommendation in the Seller Proxy Materials. Neither the Seller board of directors nor any committee thereof shall: (i) withdraw, qualify or modify, or propose publicly to withdraw, qualify or modify, in a manner adverse to Buyer, the Seller Recommendation or (ii) approve or recommend, or propose publicly to approve or recommend, any Acquisition Proposal (as defined below) (each, an "Adverse Recommendation Change"), except that, prior to the Requisite Seller Shareholder Approval, Seller's board of directors may make an Adverse Recommendation Change if:

(A) Seller's board of directors determines in good faith, after consultation with Seller's financial advisor and outside counsel, that it has received an Acquisition Proposal (that did not result from a breach of Section 4.19) that is a Superior Proposal;

(B) Seller's board of directors determines in good faith, after consultation with Seller's outside counsel, that a failure to accept such Superior Proposal would be reasonably likely to constitute a breach of the fiduciary duties of the members of the board of directors of Seller;

(C) Seller's board of directors provides written notice (a "Notice of Recommendation Change") to Buyer of its receipt of the Superior Proposal and its intent to announce an Adverse Recommendation Change on the third business day following delivery of such notice, which notice shall specify the material terms and conditions of the Superior Proposal (it being understood that any amendment to any material term of such Superior Proposal shall require a new Notice of Recommendation Change);

(D) after providing such Notice of Recommendation Change, Seller negotiates in good faith with Buyer (if requested by Buyer) and provides Buyer reasonable opportunity during the three (3)-business day period following the Notice of Recommendation Change to make such adjustments in the terms and conditions of this Agreement as would enable Seller's board of directors to proceed without an Adverse Recommendation Change (provided, however, that Buyer shall not be required to propose any such adjustments); and

(E) Seller's board of directors, following such three (3)-business day period, determines in good faith, after consultation with Seller's financial advisor and outside counsel, that such Acquisition Proposal nonetheless continues to constitute a Superior Proposal and that failure to take such action would be reasonably likely to constitute a breach of the fiduciary duties of the members of the board of directors of Seller.

37. Further locking up control of the Company in favor of United, the Merger Agreement provides for a "termination fee" of $2 million, payable by the Company to United if the Individual Defendants cause the Company to terminate the Merger Agreement.

38. By agreeing to all of the deal protection devices, the Individual Defendants have locked up the Proposed Transaction and have precluded other bidders from making successful competing offers for the Company.

39. The consideration to be provided to plaintiff and the Class in the Proposed Transaction is unfair and inadequate because, among other things, the intrinsic value of the Company is materially in excess of the amount offered in the Proposed Transaction.

40. Furthermore, the Proposed Transaction consideration fails to adequately compensate the Company's stockholders for the significant synergies created by the merger.

41. Accordingly, the Proposed Transaction will deny Class members their right to share proportionately and equitably in the true value of the Company's valuable and profitable business, and future growth in profits and earnings.

### *The Registration Statement Omits Material Information, Rendering It False and Misleading*

42. Defendants filed the Registration Statement with the SEC in connection with the Proposed Transaction.

43. The Registration Statement omits material information with respect to the Proposed Transaction, which renders the Registration Statement false and misleading.

44. First, the Registration Statement omits material information regarding HCSB's financial projections, United's financial projections, and the financial analyses performed by the Company's financial advisor, Hovde Group, LLC ("Hovde"), in support of its so-called fairness opinion.

45. While the Registration Statement discloses HCSB's projected net income for years 2017 through 2022, the Registration Statement fails to disclose any other projection line items for the Company for those years, including, but not limited to: "the forward-looking projections and key assumptions" developed by Company management; dividends; earnings; total assets; loans; total deposits; book value; total equity; return on average assets; return on average equity; and cash flow and its constituent line items.

46. The Registration Statement fails to disclose United's financial projections.

47. With respect to Hovde's *Discounted Cash Flow Analysis*, the Registration Statement fails to disclose: (i) the forward-looking projections and key assumptions developed by Company management; (ii) projected earnings estimates for HCSB for years 2017 through 2022; (iii) HCSB's after-tax net income; (iv) the terminal value for HCSB; (v) projected dividends for HCSB; (vi) asset and earnings growth rates; (vii) the inputs and assumptions underlying the discount rate range of 11.5 to 14.5%; (viii) Hovde's basis for applying a range of price-to-earnings multiples based on the median price-to-earnings multiple derived from transactions in the "Nationwide Group" in its "DCF Terminal P/E Multiple" analysis; and (ix) Hovde's basis for applying a range of price-to-tangible book value multiples based on the median price-to-tangible book value multiple derived from transactions in the Nationwide Group in its "DCF Terminal P/TBV Multiple" model.

48. With respect to Hovde's *Comparable Transactions* analysis, the Registration Statement fails to disclose the individual multiples and financial metrics for the transactions observed by Hovde.

49. With respect to Hovde's *United Comparable Companies Analysis*, the Registration Statement fails to disclose the individual multiples and financial metrics for the companies

9

observed by Hovde.

50. With respect to Hovde's *Accretion/Dilution Analysis*, the Registration Statement fails to disclose: (i) the assumptions regarding accounting treatment, acquisition adjustments, and cost savings; (ii) the estimates for earnings estimates for United for the years ending December 31, 2017 and December 31, 2018; and (iii) the earnings estimates provided by HCSB's management for HCSB for the years ending December 31, 2017 and December 31, 2018.

51. The Registration Statement also fails to disclose a fair summary of "Hovde's net present value sensitivity analysis of HCSB's estimated valuation based on [Company management's] earnings projections" and the underlying earnings projections.

52. The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion. Moreover, when a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

53. The omission of this material information renders the Registration Statement false and misleading, including, *inter alia*, the following sections of the Registration Statement: (i) "Background of the Merger"; (ii) "HCSB's Reasons for the Merger; Recommendation of the HCSB Board of Directors"; and (iii) "Opinion of HCSB's Financial Advisor."

54. Second, the Registration Statement omits material information regarding potential conflicts of interest of the Company's officers and directors.

55. Specifically, the Registration Statement fails to disclose the timing and nature of

all communications regarding future employment and/or directorship of HCSB's officers and directors, including who participated in all such communications.

56.  Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

57.  The omission of this material information renders the Registration Statement false and misleading, including, *inter alia*, the following sections of the Registration Statement: (i) "Background of the Merger"; (ii) "HCSB's Reasons for the Merger; Recommendation of the HCSB Board of Directors"; and (iii) "Interests of the Directors and Officers of HCSB in the Merger."

58.  Third, the Registration Statement omits material information regarding potential conflicts of interest of Hovde.

59.  For example, the Registration Statement fails to disclose the amount of Hovde's "fairness opinion fee" and "completion fee" to be received in connection with its engagement with HCSB.

60.  The Registration Statement also fails to disclose the amount of compensation Hovde received for the services it provided to HCSB and its affiliates in the last two years.

61.  Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

62.  The omission of this material information renders the Registration Statement false

and misleading, including, *inter alia*, the following sections of the Registration Statement: (i) "Background of the Merger"; (ii) "HCSB's Reasons for the Merger; Recommendation of the HCSB Board of Directors"; and (iii) "Opinion of HCSB's Financial Advisor."

63. Fourth, the Registration Statement fails to disclose whether any non-disclosure agreements executed by HCSB and the prospective bidders, including "Institution A," contained standstill and/or "don't ask, don't waive" provisions that are or were preventing those counterparties from submitting superior offers to acquire the Company.

64. Without this information, stockholders may have the mistaken belief that, if these potentially interested parties wished to come forward with a superior offer, they are or were permitted to do so, when in fact they are or were contractually prohibited from doing so.

65. The omission of this material information renders the Registration Statement false and misleading, including, *inter alia*, the following sections of the Registration Statement: (i) "Background of the Merger"; and (ii) "HCSB's Reasons for the Merger; Recommendation of the HCSB Board of Directors."

66. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to HCSB's stockholders.

## COUNT I

### Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and HCSB

67. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

68. The Individual Defendants disseminated the false and misleading Registration Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading. HCSB is liable as the

issuer of these statements.

69. The Registration Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Registration Statement.

70. The Individual Defendants were at least negligent in filing the Registration Statement with these materially false and misleading statements.

71. The omissions and false and misleading statements in the Registration Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Registration Statement and in other information reasonably available to stockholders.

72. The Registration Statement is an essential link in causing plaintiff and the Company's stockholders to approve the Proposed Transaction.

73. By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

74. Because of the false and misleading statements in the Registration Statement, plaintiff and the Class are threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the 1934 Act
### Against the Individual Defendants and United

75. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

76. The Individual Defendants and United acted as controlling persons of HCSB within the meaning of Section 20(a) of the 1934 Act as alleged herein. By virtue of their positions as

officers and/or directors of HCSB and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Registration Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

77. Each of the Individual Defendants and United was provided with or had unlimited access to copies of the Registration Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

78. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Registration Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly in the making of the Registration Statement.

79. United also had direct supervisory control over the composition of the Registration Statement and the information disclosed therein, as well as the information that was omitted and/or misrepresented in the Registration Statement.

80. By virtue of the foregoing, the Individual Defendants and United violated Section 20(a) of the 1934 Act.

81. As set forth above, the Individual Defendants and United had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as

controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act. As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A.   Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.   In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.   Directing the Individual Defendants to disseminate a Registration Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.   Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E.   Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F.   Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff respectfully requests a trial by jury on all issues so triable.

| | |
|---|---|
| Dated: June 16, 2017 | **DUFFY & YOUNG, LLC** |
| | /s/ J. Rutledge Young III |
| | J. Rutledge Young, III |
| | 96 Broad Street |
| | Charleston, SC 29401 |
| | (843) 720-2044 |
| | ryoung@duffyandyoung.com |
| | |
| | *Attorneys for Plaintiff* |

**OF COUNSEL:**

    **(Pro Hac Forth Coming)**

**RIGRODSKY & LONG, P.A.**
Brian D. Long
Gina M. Serra
2 Righter Parkway, Suite 120
Wilmington, DE 19803
(302) 295-5310

**RM LAW, P.C.**
1055 Westlakes Drive, Suite 3112
Berwyn, PA 19312
(484) 324-6800