UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Paul Parshall, Individually and on Behalf of All Others Similarly Situated, ) ) ) Plaintiff, ) ) v. ) ) HCSB Financial Corporation, Michael S. Addy, Clay D. Brittain, III, Gerald R. Francis, Jan H. Hollar, James C. Nesbitt, John T. Pietrzak, D. Singleton Bailey, and United Community Banks, Inc., ) ) ) ) ) ) ) ) Defendants. ) _____) | Civil Action No.: 4:17-cv-01589-RBH **ORDER DENYING EMERGENCY MOTION FOR PRELIMINARY INJUNCTION** |

This matter is before the Court on Plaintiff Paul Parshall's Emergency Motion for Preliminary Injunction whereby Plaintiff seeks to enjoin a stockholder vote scheduled for July 27, 2017, relating to the merger of Defendants HCSB Financial Corporation ("HCSB") and United Community Banks, Inc. ("UCBI"). *See* ECF No. 8. The Court held a hearing on July 21, 2017, and orally denied the motion at the end of the hearing. *See* ECF No. 28. The Court now issues the following Findings of Fact and Conclusions of Law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure. To the extent that any Findings of Fact constitute Conclusions of Law, or vice-versa, they shall be so regarded.[1]

**Findings of Fact**[2]

On June 16, 2017, Plaintiff filed a complaint naming as defendants HCSB, HCSB's Board of Directors (who are named as individual defendants), and UCBI. *See* ECF No. 1. Plaintiff alleges in

---

[1]     The Court prepared this Order in an expedited manner due to obvious time constraints.

[2]     The Court gleans these facts from Plaintiff's complaint, Plaintiff's current motion and attachments, Defendants' responses and attachments, and representations made by the parties at the expedited hearing. *See* ECF Nos. 1, 8, 24, & 26. The Court cites these filings where practicable.

his complaint that (1) "[t]his action stems from a proposed transaction announced on April 20, 2017," pursuant to which HCSB will be acquired by UCBI; (2) on April 19, 2017, HCSB's Board of Directors caused HCSB to enter into an agreement and plan of merger with UCBI, and pursuant to the terms of the Merger Agreement, stockholders of HCSB will receive 0.005 shares of UCBI per share of HCSB; (3) "[o]n May 17, 2017, defendants filed a Form S-4 Registration Statement (the 'Registration Statement') with the United States Securities and Exchange Commission ('SEC') in connection with the Proposed Transaction"; and (4) "[t]he Registration Statement omits material information with respect to the Proposed Transaction, which renders the Registration Statement false and misleading" and violates Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("the Exchange Act"). *Id.* at ¶¶ 1–4.

On July 14, 2017, Plaintiff filed the instant Emergency Motion for Preliminary Injunction and attached a copy of the Registration Statement. *See* ECF No. 8. He seeks to preliminary enjoin the stockholder vote on the proposed transaction challenged in this action scheduled for this Thursday, July 27, 2017, pursuant to which HCSB will be acquired by UCBI through a wholly-owned subsidiary. *Id.* He seeks to enjoin the stockholder vote pending what he claims are necessary corrective disclosures by Defendants.[3] *Id.* Defendants have filed responses in opposition with attached exhibits, including several declarations. *See* ECF Nos. 24 & 26.

Plaintiff argues the Registration Statement is materially misleading and incomplete and omits material information, to wit: (1) the financial projections prepared by HCSB (and UCSB) and relied

---

[3] Plaintiff Paul Parshall is a frequent litigant of these types of actions. In the last year alone, he has filed at least thirty-two complaints seeking to enjoin merger transactions in state and federal courts across the country. Thirty of these suits were filed by Plaintiff's Delaware counsel in this case, Rigrodsky & Long, P.A., most with RM Law, P.C. serving as co-counsel. *See* ECF No. 24 at 2–3 n.1 (listing all thirty-two cases). Additionally, the Court notes Mr. Parshall was not present at the hearing on his emergency motion. HCSB refers to these lawsuits as "'shakedown' cases." *See* ECF No. 26 at 26.

upon by HCSB's financial advisor, Hovde Group, LLC ("Hovde"); (2) potential conflicts of interest affecting Hovde, financial advisor to the Board; and (3) terms of a nondisclosure agreement ("NDA") executed by another bidder and Plaintiff's concerns about the potential presence of a standstill provision preventing the competing bidder from making a topping bid. ECF No. 8-1 at 9, 14. At the hearing, Plaintiff's counsel appeared to be satisfied with HCSB's response and evidence indicating there was no standstill provision in the NDA. Regardless, as explained in this Order, Plaintiff has not met his burden of proof for purposes of this motion as to any of these allegations or arguments.

Plaintiff owns two one-hundred thousandths of a percent (only 0.00002%) of the outstanding shares of HCSB. He purchased $11 in stock on November 3, 2016, which converts to less than one share of UCBI stock under the proposed merger. *See* ECF No. 26-3. While he has brought this case as a putative class action, no class has been certified, and Plaintiff has presented no evidence that he represents the interests (adequately or otherwise) of other shareholders. No affidavit or declaration from Plaintiff or any other shareholder has been submitted alleging the Registration Statement was misleading or contained material omissions. In his motion, Plaintiff seeks to enjoin the shareholders from voting on the merger with UCBI that is currently valued at approximately $66 million, even though HCSB shareholders have already returned proxies demonstrating overwhelming support for the proposed merger, far in excess of the threshold of outstanding shares needed for approval. The sole basis for the extraordinary relief Plaintiff seeks is that the Final Proxy (i.e., the Registration Statement), which is sixty-one pages long with fifty pages of attachments and refers to voluminous other public information, is allegedly inadequate under Sections 14(a) and 20(a) of the Exchange Act.

In support of his position, Plaintiff relies solely on arguments of counsel, his memorandum, and the filed Registration Statement. Plaintiff was not present at the hearing, and no declaration or affidavit

3

from Plaintiff was submitted. However, HCSB submitted the declaration of Defendant Jan Hollar, who is the CEO of HCSB. *See* ECF No. 26-5. Ms. Hollar states the following: (1) to her knowledge, no shareholder other than Plaintiff has contacted HCSB and suggested that the proxy disclosures are misleading or inadequate, or that he or she needs more information in order to decide how to vote on the proposed transaction; (2) as of July 20, 2017, the holders of 339,821,636 (or 83.86%) of the 405,232,383 outstanding shares of HCSB voting common stock have delivered their proxies, and of those voting so far, 99.96% of shares have been voted in favor of the proposed merger, which represents a shareholder approval rate well in excess of the 66.7% (or two-thirds) required to approve the merger under South Carolina law; (3) as of July 20, 2017, the holders of all 90,531,557 outstanding shares of HCSB non-voting common stock had delivered their proxies, and of those voting so far, 100.0% of all shares have been voted in favor of the proposed merger, which is substantially higher than the simple majority of non-voting shareholder approval needed under South Carolina law; (4) in addition to the SEC's review of the Registration Statement/Preliminary Proxy, the proposed merger has been approved by the state banking regulators in both Georgia and South Carolina; (5) the proposed merger applications have also been approved by the FDIC and the Board of Governors of the Federal Reserve System; (6) there is no higher priced alternative to the merger with UCBI and no other bidders have come forward since the announcement of the merger with UCBI; (7) HCSB entered into a NDA dated January 25, 2017, with Institution A, and this agreement did not include a standstill or any other provision which would have precluded or limited Institution A's ability to submit a topping bid or any other merger offer; (8) after reviewing all relevant expenses and obligations related to the proposed merger, Ms. Hollar has determined that a thirty-day delay in vote would likely cost HCSB more than $420,000 that would otherwise not be incurred if the vote proceeded as scheduled (and if the delay is

longer, the cost will be even higher); (9) a delay of the shareholder vote would result in delaying the consummation of the transaction and would impose other significant logistical problems and expenses upon HCSB and its employees; (10) a delay of the HCSB shareholder vote would have an adverse impact on the public, including consumers of HCSB's banking services; (11) the HSCB Board determined in good faith exercise of their business judgment that the merger with UCBI represented the best opportunity to maximize shareholder value, and postponing the shareholder vote could jeopardize the merger and present some risk of the transaction not being consummated; (12) HCSB stockholders could be further harmed because a delay in the vote may result in a reduction in share value of the stock of either HCSB or UCBI and endanger the premium to HCSB shareholders sought to be achieved by the merger; (13) an injunction would create uncertainty among HCSB's shareholders, customers, and employees and potentially hinder HCSB's operations if bank employees or customers leave HCSB in the wake of such uncertainty and instability; and (14) HCSB has already incurred substantial expenses related to the proposed merger, most of which would not be recoverable if this merger opportunity is lost. *Id.* at 1–3.

Additionally, HCSB submitted declarations of various shareholders who own millions of shares of HCSB common stock and who have significant holdings in HCSB. *See* ECF No. 26-8. Specifically, HCSB submitted declarations from: (1) David Volk, who serves as the principal of Castle Creek Capital Partners VI, LP, which owns approximately 22.19% of all HCSB common shares outstanding; (2) Ben Mackovak, who serves as the managing member of Strategic Value Investors LP, which owns 6.07% of all HCSB common shares outstanding; (3) Michael Rosinus, who serves as a senior advisor for Tricadia Capital Management, LLC, which owns approximately 4.49% of all HCSB common shares outstanding; and (4) John J. Lyons, who serves as the managing principal of Commerce Street Keefe

Ventures Fund III, LP, which owns approximately 4.49% of all HCSB common shares outstanding. *Id.* All four declarants state that (1) they have studied the proposed merger between HCSB and UCBI, concluded the disclosures in the Proxy Statement are fully adequate, and do not need any further information in order to decide whether to vote in favor of the merger; (2) they are in favor of the proposed merger, have delivered their proxy cards with instructions to vote all their shares in favor of the merger, want the vote to proceed and the merger to close as soon thereafter as possible, and would be very disappointed and believe it would be detrimental to the HCSB shareholders if the vote or consummation of the merger is delayed or the opportunity lost; and (3) they have reviewed Plaintiff's complaint, do not believe Plaintiff represents their interests in connection with the proposed merger or the issues raises in the pleading, do not find the disclosure issues raised by Plaintiff are material to them in deciding whether to vote for or against the merger in light of the total mix of information disclosed in the Proxy Statement and the publicly available information, and would be very disappointed with any delay of the shareholder vote or consummation of the merger because of any issues raised in Plaintiff's lawsuit. *Id.*

UCBI has submitted the declaration of Christian Zych, who is UCBI's Senior Vice President, Director of Mergers & Acquisitions and Management Reporting and who has been involved in the pending transaction with HCSB. ECF No. 24-1 at ¶ 3. Zych states that as disclosed in the Proxy Statement, Hovde has not provided any investment banking or financial advisory services to UCBI; and in fact, Hovde has never provided any investment banking or financial advisory services to UCBI. *Id.* at ¶ 4. Zych further avers that regarding any internal management projections prepared by UCBI, UCBI did not provide any of its internal forecasts or projections to HCSB's management, board of directors, or Hovde, including in connection with UCBI's offer to acquire HCSB or the subsequent negotiation

6

and review of the merger agreement. *Id.* at ¶ 5. Finally, Zych avers that to the extent UCBI prepares any internal forecasts or projections, UCBI regards this information as confidential and as a matter of course does not publicly disclose such forecasts or projections. *Id.* at ¶¶ 6–7.

As explained in more detail below, the Court finds that Plaintiff has not met his burden of proof with regard to each of the elements for a preliminary injunction, and that his request must therefore be denied.

## Conclusions of Law

**I.     Preliminary Injunction Standard**

Federal Rule of Civil Procedure 65 establishes the procedure for federal courts to grant preliminary injunctions. *See* Fed. R. Civ. P. 65. Because of the extraordinary nature of injunctive relief, the United States Supreme Court has admonished that preliminary injunctions "may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22.

A plaintiff seeking a preliminary injunction must establish all four of the following criteria: (1) that the plaintiff is likely to succeed on the merits, (2) that the plaintiff is likely to suffer irreparable harm in the absence of preliminary injunctive relief, (3) that the balance of equities tips in the plaintiff's favor, and (4) that the injunction is in the public interest. *League of Women Voters of N. Carolina v. N. Carolina*, 769 F.3d 224, 236 (4th Cir. 2014) (citing *Winter*, 555 U.S. at 20). A plaintiff must make a *clear* showing that it is likely to succeed on the merits of its claim. *Winter*, 555 U.S. at 20-22. Likewise, a plaintiff must make a *clear* showing that it is likely to be irreparably harmed absent injunctive relief. *Id.* Only then may the court consider whether the balance of equities tips in the plaintiff's favor. *Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 575 F.3d 342, 346-47 (4th Cir. 2009), *vacated on other grounds*, 559 U.S. 1089 (2010), *reissued in part*, 607 F.3d 355 (4th Cir.

2010), *overruling Blackwelder Furniture Co. of Statesville v. Seilig Mfg. Co.*, 550 F.2d 189 (4th Cir. 1977). Finally, the court must pay particular regard to the public consequences of employing the extraordinary relief of injunction. *Id.* at 347.

## II.    Discussion

### A.    Likelihood of Success on the Merits

The first *Winter* factor requires Plaintiff to clearly show he will likely succeed on the merits of his claims. *See* 555 U.S. at 20. Plaintiff alleges Defendants violated sections 14(a) and 20(a) of the Exchange Act.[4] ECF No. 8-1 at 11. Section 14(a) of the Exchange Act "was intended to promote the free exercise of the voting rights of stockholders by ensuring that proxies would be solicited with explanation to the stockholder of the real nature of the questions for which authority to cast his vote is sought." *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 444 (1976) (internal quotation marks omitted). "It is well settled that § 14(a) of the Securities Exchange Act grants an implied private right of action."[5] *Edge Partners, L.P. v. Dockser*, 944 F. Supp. 438, 440 (D. Md. 1996) (citing *J. I. Case Co. v. Borak*, 377 U.S. 426, 430 (1964)).

Section 14(a) prohibits "the solicitation of a proxy regarding any security, by way of interstate commerce, in contravention of the rules and regulations prescribed by the" SEC. *Hayes v. Crown Cent. Petroleum Corp.*, 78 F. App'x 857, 861 (4th Cir. 2003). "SEC Rule 14a–9 prohibits false or misleading

---

[4]    Section 20(a) "imposes liability on each person who 'controls any person liable under any provision of this chapter.'" *Matrix Capital Mgmt. Fund, LP v. BearingPoint, Inc.*, 576 F.3d 172, 192 (4th Cir. 2009) (quoting 15 U.S.C. § 78t(a)). A plaintiff must successfully allege a predicate violation of the Exchange Act to proceed under section 20(a). *See id.* As explained below, Plaintiff fails to clearly show a likelihood of success on the merits of his predicate section 14(a) claim, and therefore cannot clearly show a likelihood of success on the merits of a section 20(a) claim.

[5]    "Section 27 of the Act specifically grants the appropriate district courts jurisdiction over all suits in equity and actions at law brought to enforce any liability or duty created under the Act." *Parsons v. Jefferson-Pilot Corp.*, 789 F. Supp. 697, 701 (M.D.N.C. 1992).

8

statements with respect to material facts as well as the omission of material facts necessary to make the statements therein not false or misleading." *Id.* (citing 17 C.F.R. § 240.14a–9(a)). "A shareholder establishes a violation of Rule 14a–9, which is promulgated under Section 14(a) of the Securities Exchange Act[,] by establishing: (1) the proxy statement contains a material misrepresentation or omission; (2) the defendants were negligent; and (3) the proxy was the essential link in completing the transaction in question." *Parsons v. Jefferson-Pilot Corp.*, 789 F. Supp. 697, 701 (M.D.N.C. 1992). "A misrepresentation or omission is material if there is a substantial likelihood that the disclosure of the omitted fact would have been viewed by a reasonable investor as having significantly altered the total mix of information made available." *Hayes*, 78 F. App'x at 861 (4th Cir. 2003) (citing *TSC Indus.*, 426 U.S. at 449). This standard "does not require proof of a substantial likelihood that disclosure of the omitted fact would have caused the reasonable investor to change his vote." *TSC Indus.*, 426 U.S. at 449. "What the standard does contemplate is a showing of a substantial likelihood that, under all the circumstances, the omitted fact would have assumed actual significance in the deliberations of the reasonable shareholder." *Id.*

Here, Plaintiff claims the Registration Statement fails to disclose and omits material information concerning (1) HCSB's and UCBI's financial projections and (2) potential conflicts of interest affecting Hovde.[6]  ECF No. 8-1 at 9, 14.

### 1.     Financial Projections

Plaintiff first claims the Registration Statement omits material information regarding HCSB's and UCBI's financial projections. *Id.* at 9, 14. He alleges the Registration Statement "misleadingly

---

[6]     As indicated above, Plaintiff's counsel indicated at the hearing that HCSB's response and evidence removed any concern regarding a standstill provision in the NDA.

9

fails to disclose or even include any information concerning" HCSB's management projections. *Id.* at 14–15. Specifically, Plaintiff seeks disclosure of projected financial forecasts that include: dividends, earnings, total assets, loans, total deposits, book value, total equity, return on average assets, return on average equity, and cash flow and its constituent line items. *Id.* at 18 n.7. He asserts "[t]his material omission is especially stark" because the individual defendants specifically considered the prospects of HCSB, and because Hovde reviewed financial projections when rendering its fairness opinion. *Id.* at 15. Plaintiff further maintains that based upon a review of the Registration Statement, "it is clear that management's financial forecasts played a significant role in the decision to approve the Merger Agreement." *Id.*

The Fourth Circuit has recognized "the SEC has not imposed a duty to disclose financial projections in disclosure documents generally." *Walker v. Action Indus., Inc.*, 802 F.2d 703, 709 (4th Cir. 1986). Instead, whether such a duty exists depends on "the circumstances of" the particular case. *See id.*

Here, for purposes of this preliminary injunction motion, the Court finds Plaintiff has not satisfied his burden of proof regarding his allegations of material omissions. Further, the Court finds Plaintiff has not carried his burden of showing negligence or injury. *See Parsons*, 789 F. Supp. at 701. As explained below, the Court finds the alleged financial projections sought by Plaintiff would not have been viewed by the reasonable investor as having significantly altered the total mix of information made available. *See TSC Indus.*, 426 U.S. at 449; *Hayes*, 78 F. App'x at 861. The omission of this information from the Registration Statement/Final Proxy does not appear to be material for the following reasons.

The Registration Statement disclosed management's net income projections for HCSB for the

years ending December 31, 2017 through 2022, which formed the basis for Hovde's discounted cash flow analyses that were performed and presented to HCSB in connection with Hovde's fairness opinion. *See* Registration Statement [ECF Nos. 8-2, 26-1, & 26-2]. The Court's determination is further supported by the four shareholder declarations provided by HCSB, which state that the disclosures in the Final Proxy as written contain all information material to investors and that the additional details requested by Plaintiff are not material information needed by the shareholders. *See* ECF No. 26-8. Moreover, Ms. Hollar avers in her declaration that no shareholder other than Plaintiff has contacted HCSB and suggested the proxy disclosures are misleading or inadequate, or that he or she needs more information in order to decide how to vote on the proposed transaction. *See* ECF No. 26-5. Ms. Hollar further states the holders of 83.86% of HCSB common stock have delivered their proxies, and that 99.96% of these shares have been voted in favor of the proposed merger, which is well in excess of the two-thirds needed under South Carolina law. *Id.* Ms. Hollar also avers 100.0% of all holders of non-voting common stock have delivered their proxies to be voted in favor of the proposed merger. *Id.*

Moreover, while Plaintiff speculates that UCBI provided internal projections to Hovde and that these projections were omitted from the Registration Statement, in actuality UCBI did not provide any financial projections to HCSB or Hovde in connection with the transaction, as indicated by Mr. Zych's declaration. *See* ECF No. 24-1. In fact, when UCBI does prepare any financial projections or forecasts, it as a matter of course does not publicly disclose those because of their speculative nature. *Id.*

Finally, the Court notes Plaintiff has not submitted an affidavit or declaration from himself or any other shareholder or from an expert addressing the materiality of the alleged omissions. The Court finds Plaintiff has not clearly shown a likelihood of success on the merits regarding his allegation that the Registration Statement omits material information about HCSB or UCBI's financial projections.

### 2.     Hovde's Potential Conflicts of Interest

Next, Plaintiff claims the Registration Statement "is materially misleading in that it fails to disclose both the amounts of Hovde's 'fairness opinion fee' and 'completion fee' to be received in connection with its engagement with HCSB, as well as the amount of compensation Hovde has received for services it provided to HCSB and its affiliates in the last two years." ECF No. 8-1 at 18. Plaintiff alleges these issues "represent important, potential conflicts of interest that could significantly taint the advice provided by the financial advisor to the Board." *Id.*

Here, for purposes of this preliminary injunction motion, the Court finds Plaintiff has not satisfied his burden of proof regarding his allegations of material omissions. Further, the Court finds Plaintiff has not carried his burden of showing negligence or injury. *See Parsons*, 789 F. Supp. at 701. As explained below, the Court finds the alleged omissions regarding Hovde would not have been viewed by the reasonable investor as having significantly altered the total mix of information made available. *See TSC Indus.*, 426 U.S. at 449; *Hayes*, 78 F. App'x at 861. The omission of this information from the Registration Statement does not appear to be material for the following reasons.

First, the Final Proxy discloses that Hovde has performed other services for HCSB for a fee over the past two years and would receive both a completion fee and fairness opinion fee for the merger. *See* Registration Statement [ECF Nos. 8-2, 26-1, & 26-2]. Furthermore, Ms. Hollar avers in her declaration that no shareholder other than Plaintiff has contacted HCSB and suggested the proxy disclosures are misleading or inadequate, or that he or she needs more information in order to decide how to vote on the proposed transaction. *See* ECF No. 26-5. Moreover, Hovde states in its fairness opinion (included in the Final Proxy) that it has not provided investment banking and financial advisory services to UCBI in the past two years; and Mr. Zych avers the same in his declaration. *See* Registration Statement [ECF

Nos. 8-2, 26-1, & 26-2]; ECF No. 24-1.  Finally, the shareholder declarations provided by HCSB state that the disclosures in the Final Proxy as written contain all information material to investors, and that the additional details requested by Plaintiff are not material information needed by the shareholders. *See* ECF No. 26-8.  And again, the Court notes Plaintiff has not submitted an affidavit or declaration from himself or any other shareholder or from an expert addressing the materiality of the alleged omissions.  The Court finds Plaintiff has not clearly shown a likelihood of success on the merits regarding his allegation that the Registration Statement omits material information about Hovde's relationship with HCSB and UCBI.

In sum, the Court finds Plaintiff has not made a clear showing that he is likely to succeed on the merits of his allegations that Defendants violated sections 14(a) or 20(a) of the Exchange Act.[7]

### B.     Likelihood of Irreparable Harm

The second *Winter* factor requires Plaintiff to clearly show irreparable harm will occur absent an injunction.  *See* 555 U.S. at 20.  Plaintiff claims he has identified material omissions that, if left unremedied, render the Registration Statement materially incomplete and misleading and prevent HCSB's stockholders from casting a fully informed vote on the proposed transaction.  ECF No. 8-1 at 23.

The Court finds Plaintiff has not made a clear showing of irreparable harm for multiple reasons. First, Plaintiff has not submitted an affidavit or declaration from himself (or an expert) detailing how

---

[7]     As noted above, because Plaintiff fails to clearly show he is likely to succeed on the merits of his section 14(a) claim—which is a predicate for a section 20(a) claim—he likewise fails to clearly show he is likely to succeed on the merits of his section 20(a) claim.

the omitted disclosures would inform his vote.[8]  Second, Plaintiff has failed to show why monetary damages are not an adequate remedy; specifically, he appears to have an adequate remedy at law because he could be compensated with money damages for his current $14 holding, and therefore extraordinary injunctive relief is not appropriate.[9]  Finally, and perhaps most obviously, Plaintiff owns a minuscule share of HCSB stock and is the only stockholder claiming irreparable injury.[10]  This case has not been certified as a class action; Plaintiff has not moved for class certification; and Plaintiff has not identified any other stockholders claiming they need the same disclosures he seeks.  *See, e.g.*, *Malon v. Franklin Fin. Corp.*, 2014 WL 6791611, at *3 (E.D. Va. Dec. 2, 2014) (acknowledging "it is true stockholders theoretically face irreparable harm when they are required to make important voting decisions on the basis of inadequate proxy disclosures," but finding "a single disgruntled stockholder with a *de minimis* ownership interest" does not face irreparable harm).  Accordingly, the Court finds Plaintiff has not clearly shown irreparable injury will result absent a preliminary injunction.

### C.   Balance of Equities

The third *Winter* factor requires Plaintiff to show the balance of the equities tips in his favor.  *See Winter*, 555 U.S. at 20.  First, while not dispositive, the Court notes Plaintiff filed his motion just

---

[8]   *See, e.g.*, *Gottlieb v. Willis*, 2012 WL 5439274, at *7 (D. Minn. Nov. 7, 2012) ("Gottlieb has not submitted so much as a declaration averring that the information she seeks would be material to her vote, much less an expert affidavit stating that a reasonable investor would likely find the omitted information material.").

[9]   *See, e.g.*, *Calleros v. FSI Int'l, Inc.*, 892 F. Supp. 2d 1163, 1174 (D. Minn. 2012) (finding no irreparable harm in part because "monetary damages are regularly used to satisfy claims alleging violations of the securities laws"); *Iavarone v. Raymond Keyes Assocs., Inc.*, 733 F. Supp. 727, 732 (S.D.N.Y. 1990) (finding "equitable relief is not appropriate, as money damages will fully compensate plaintiff" for his allegations that the defendants violated the Exchange Act "by making false statements of material facts and omitting to state material facts").

[10]   In fact, under the terms of the merger agreement, Plaintiff would receive 0.005 shares of UCBI common stock for each share of HCSB stock he owns, which would equate to 0.50 shares of UCBI common stock.  *See* ECF No. 26 at 13.  Because Plaintiff would own less than one share of UCBI common stock after consummation of the merger, Plaintiff would receive cash instead of a fractional share pursuant to the terms of the merger agreement.  *Id.*

thirteen days before the scheduled stockholder vote.[11]  Other courts addressing similar scenarios have recognized the harm that defendants will likely suffer when a single shareholder plaintiff seeks to enjoin a shareholder vote at the eleventh hour.  *See, e.g.*, *Orlando v. CFS Bancorp, Inc.*, 2013 WL 5797624, at *6 (N.D. Ind. Oct. 28, 2013); *Gottlieb v. Willis*, 2012 WL 5439274, at *7 (D. Minn. Nov. 7, 2012); *Galaton v. Johnson*, 2011 WL 9688271, at *2 (E.D.N.C. Aug. 17, 2011).  Second, Plaintiff is the only HCSB shareholder to raise any objection to the transaction.  Third, Plaintiff owns 0.00002% of the outstanding shares of HCSB, which is equivalent to approximately $14; in comparison, the merger of HCSB and UCBI is valued at approximately $66 million.  In fact, if the merger is consummated, Plaintiff owns such a small percentage that he will receive cash instead of a fractional share of UCBI common stock.  *See* ECF No. 26 at 13.  Fourth, other stockholders who own millions of shares of HCSB common stock have submitted declarations stating they are in favor of the merger and need no further disclosures; and HCSB shareholders overwhelmingly support the merger with UCBI, as 83.86% of voting shareholders and 100.0% of non-voting shareholders have voted to approve the merger.  Finally, while Plaintiff claims the "outer termination date" for the merger "is still more than 2.5 months away" and would "still leav[e] ample time" for consummation of the transaction, he fails to comprehend the immediate financial consequences to HCSB.  Ms. Hollar avers in her declaration that "a 30-day delay in vote would likely cost HCSB more than $420,000 that would otherwise not be incurred if the vote proceeded as scheduled," and that if the delay is longer than thirty days, "the cost will be even higher." ECF No. 26-5 at ¶ 11.  Ms. Hollar also avers a delay in vote could jeopardize the merger itself, impose

---

[11]     The Court acknowledges Plaintiff's representation that—after filing his complaint on June 16, 2017—he unsuccessfully engaged with Defendants to resolve the alleged deficiencies in the Registration Statement. ECF No. 8-1 at 9.  The Court is focusing on the short timeframe between Plaintiff's filing his motion and the stockholder vote simply to address the practical harms that could result to Defendants from delaying a stockholder vote on such short notice.

significant logistical problems and expenses upon HCSB and its employees, result in a reduction in share value of the stock of either HCSB or UCBI, and potentially cause HCSB to lose employees if the merger is delayed. *Id.* at ¶¶ 12–16. Significantly, Ms. Hollar points out HCSB has already incurred substantial expenses related to the proposed merger, most of which would not be recoverable if this merger opportunity is lost. *Id.* at ¶ 17. In light of these considerations, the Court finds Plaintiff has not carried his burden to show the equities tip in his favor.

### D.     Public Interest

The final *Winter* factor requires Plaintiff to show preliminary injunctive relief is in the public interest. *See Winter*, 555 U.S. at 20. Here, the Court finds enjoining a stockholder vote on a $66 million dollar bank merger scheduled for this Thursday has the potential to be enormously disruptive and create public uncertainty regarding the entities involved. Accordingly, the Court finds Plaintiff has not met his burden to show a preliminary injunction is in the public interest.

### Conclusion

The Court finds Plaintiff has failed to meet his burden on all four *Winter* factors. Accordingly, the Court **DENIES** Plaintiff's Emergency Motion for Preliminary Injunction [ECF No. 8].

**IT IS SO ORDERED.**

Florence, South Carolina                                         s/ R. Bryan Harwell
July 24, 2017                                                              R. Bryan Harwell
                                                                                     United States District Judge